**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HOSAI YONOSZAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:26-cv-14326 |
| v. | ) | |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff Hosai Yonoszai, through undersigned counsel, brings this action against Defendant Microsoft Corporation and alleges as follows:

## PARTIES

1. Plaintiff Hosai Yonoszai ("Plaintiff") is a woman who resides in Hanover Park, Illinois, within this District.

2. Defendant Microsoft Corporation ("Microsoft") is a corporation with its principal place of business in Redmond, Washington.

3. Microsoft conducts business in Illinois and employed Plaintiff to work remotely from her Illinois residence.

4. At all relevant times, Microsoft was engaged in an industry affecting commerce and employed at least fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

5. Microsoft was an employer, and Plaintiff was an employee, within the meaning of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act ("IHRA").

6. Microsoft acted through its managers, supervisors, human resources personnel, and other employees in the matters alleged below.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).

8. This Court has subject-matter jurisdiction over Plaintiff's claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

9. This Court has supplemental jurisdiction over Plaintiff's IHRA claims under 28 U.S.C. § 1367(a) because those claims arise from the same employment relationship and events as her Title VII claims and form part of the same case or controversy.

10. This Court has personal jurisdiction over Microsoft because Microsoft employed Plaintiff in Illinois, directed the challenged employment actions to her Illinois workplace, and Plaintiff's claims arise from that employment.

11. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3). Plaintiff worked for Microsoft in this District and would have continued working here but for the challenged employment practices.

12. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PROCEEDINGS

13. Plaintiff filed a verified charge of discrimination against Microsoft with the Equal Employment Opportunity Commission (“EEOC”), assigned Charge No. 440-2025-03281.

14. The charge was signed and dated on or about November 14, 2025, alleged sex discrimination and retaliation under Title VII and the IHRA, and was cross-filed with both the EEOC and the Illinois Department of Human Rights ("IDHR").

15. The charge challenged Microsoft's denial of work opportunities, performance-related actions, and discharge of Plaintiff. Plaintiff filed the charge within 300 days of the challenged 2025 employment actions.

16. On October 23, 2026, the EEOC issued a Determination and Notice of Rights dismissing the charge and notifying Plaintiff of her right to sue Microsoft.

17. This action is brought within ninety days after receipt of that notice.

## FACTUAL ALLEGATIONS

A. Employment and work assignments

18. Plaintiff began her employment with Microsoft on or about April 11, 2022, as a Cloud Solution Architect ("CSA").

19. Plaintiff worked remotely from her home in Illinois throughout her employment.

20. Rahul Ambli ("Ambli") supervised Plaintiff from approximately July 2022 until on or about July 14, 2025.

21. Ambli directed her work and evaluated her performance.

22. On or about December 9, 2022, Microsoft assigned Plaintiff to a major enterprise customer account (the "Account").

23. Plaintiff was one of two CSAs dedicated to that account and the only woman serving as a dedicated CSA. The other dedicated CSA was Jonathan Moons ("Moons").

24. The CSA role involved technical work and customer engagements.

25. Microsoft evaluated Plaintiff on technical contributions, ownership of customer work, and customer impact.

26. From December 2022 through June 2023, Microsoft assigned Plaintiff nontechnical tasks, including management of the Account's semester planning program, and directed her to obtain an Azure certification.

27. On or about June 3, 2023, Plaintiff obtained the Microsoft Certified: Azure Solutions Architect Expert certification.

28. Plaintiff obtained three Azure certifications during her employment.

29. In Plaintiff's April 2023 performance evaluation, known as a "Connect," Ambli stated that Plaintiff had made meaningful contributions to the Account team and exceeded expectations.

30. On or about May 10, 2023, Microsoft announced a company-wide salary freeze for that year.

31. For fiscal year 2023, Plaintiff received an annual cash bonus, quarterly incentive compensation, and a stock award.

32. Plaintiff worked on an Account technical initiative called "Protected Backup" during 2023 and assumed its lead role.

33. In Plaintiff's November 2023 "Connect", Ambli again provided positive feedback, acknowledging her response to prior feedback, her assumption of additional work, and her leadership of semester planning.

34. Plaintiff received written appreciation from an Account employee concerning her work.

35. On or about November 27, 2023, the Account placed that initiative on hold for reasons unrelated to Plaintiff's performance.

36. After the Account placed the technical initiative on hold, Plaintiff repeatedly sought additional technical assignments from Moons and an Account Sales Specialist, Neel Patel ("Patel").

37. Microsoft continued assigning her primarily nontechnical coordination and reporting work.

B. Exclusion from technical work and customer meetings

38. On or about March 27, 2024, Moons convened an initial technical discussion concerning an Account migration.

39. Moons, Preston Romney, and Julius Dietmar, all male CSAs, were included.

40. Plaintiff was not invited, although she was a dedicated CSA for the Account and Romney and Dietmar were not.

41. On or about May 23, 2024, Ambli assigned Plaintiff a "Lower Impact Than Expected" ("LITE") performance rating.

42. Plaintiff then provided weekly written reports of her work and met with Ambli to address his feedback.

43. Plaintiff performed the assignments Ambli directed her to undertake.

44. In July 2024, when Moons was transitioning off the Account, Plaintiff assumed responsibility for the migration technical engagement.

45. On or about August 9, 2024, Ambli told Plaintiff that he was pleased with her progress and directed her to submit a travel request to attend an Account workshop scheduled for September 16, 2024, in Lehi, Utah.

46. On or about August 12, 2024, Plaintiff asked Moons to add her to the workshop's in-person attendee list.

47. Moons declined, stating that additional Microsoft personnel should not attend.

48. The CSAs invited to attend in person were Moons, Korey Kolberg ("Kolberg"), and Ovi Timpanariu ("Timpanariu"), all men.

49. Kolberg and Timpanariu were not dedicated CSAs for the Account.

50. Plaintiff informed Ambli that Moons had denied her attendance. Ambli did not secure her attendance.

51. On or about August 16, 2024, Ambli nevertheless directed Plaintiff to continue leading the migration technical engagement.

52. On or about August 20, 2024, Microsoft assigned Matthew Garrett ("Garrett") and Velen Liang ("Liang"), both men, as dedicated CSAs for the Account.

53. On or about August 26, 2024, Ambli informed Plaintiff that she would receive no annual bonus, stock award, or merit increase for fiscal year 2024.

54. Plaintiff was the only female dedicated CSA assigned to the Account. Male CSAs, including those who were not dedicated to the Account or had only recently joined it, received invitations to technical meetings and customer opportunities from which Plaintiff was excluded.

55. Microsoft included Moons, Garrett, and Liang, all male CSAs, in invitations to Account customer meetings and opportunities from which Plaintiff was excluded.

56. Those Account meetings included an initiative called "Campaign" on or about September 3, 2024 and another Account meeting on or about September 5, 2024.

57. Plaintiff was also omitted from the Account workshop's remote-attendance invitation list, including after Garrett and Liang were added.

58. Plaintiff obtained an invitation only after separately requesting one from Liang shortly before the workshop.

59. On or about September 4, 2024, Plaintiff reported to Ambli that her male colleagues were receiving customer meeting invitations and communications from which she was being excluded.

60. On or about September 5, 2024, Plaintiff sought to resume the Account's Protected Backup technical initiative but was informed by Patel that it was too soon to proceed. Four days later, Ambli criticized Plaintiff for her lack of ownership of that same initiative.

61. On or about September 9, 2024, Ambli acknowledged in writing that the account team had excluded Plaintiff from customer meetings and opportunities. He relayed criticism from account-team members concerning Plaintiff's technical contributions and ownership of work.

62. On or about September 10, 2024, Plaintiff disputed those criticisms in writing, described her work on the 2023 Account technical initiative, and supplied customer correspondence recognizing her contributions.

63. Plaintiff included Human Resources and Microsoft's Workplace Investigations Team in that communication.

64. On or about September 13, 2024, Plaintiff told Ambli that the exclusion was impairing her performance, compensation, and future at Microsoft.

65. Ambli did not correct the exclusion.

66. Rather than addressing the exclusion with the Account team, Ambli directed Plaintiff to work toward changing the team's perception of her, placing responsibility on Plaintiff to address the consequences of her exclusion.

C. Complaints of sex discrimination and removal from the Account

67. On or about September 27, 2024, Plaintiff submitted a detailed written complaint to Human Resources and Global Employee Relations.

68. She expressly reported that the Account team was excluding her from customer opportunities, meetings, and communications because she was female.

69. She identified the people involved, the events and evidence supporting her complaint.

70. Plaintiff reasonably and in good faith believed that the different treatment of her and the male CSAs constituted unlawful sex discrimination.

71. Plaintiff began approved medical leave on or about September 28, 2024.

72. Microsoft approved leave under the FMLA from on or about September 28, 2024, through on or about December 20, 2024, followed by leave under its short-term disability policy from on or about December 21, 2024, through on or about March 27, 2025.

73. Plaintiff returned to work on or about March 28, 2025.

74. On or about February 6, 2025, before Plaintiff returned to work in March 2025, her counsel notified Microsoft in writing of her sex-discrimination complaints, including the denial of work opportunities and resulting adverse performance and compensation decisions.

75. Microsoft therefore received Plaintiff's complaints of sex discrimination before the adverse employment actions alleged below.

76. On or about April 1, 2025, Ambli informed Plaintiff that she had been removed from the Account.

77. Ambli stated to Plaintiff that there was no opportunity for her direct contribution to the Account and that Garrett and Liang were thereafter responsible for all technical aspects of the account, including the areas previously assigned to Plaintiff.

78. Microsoft did not assign Plaintiff another customer account.

79. Ambli directed her to focus on additional accreditation and shadowing instead of providing customer or technical assignments.

80. Plaintiff remained without a customer account from on or about April 1, 2025, through the end of her employment, despite her requests for work.

D. Adverse performance action, retaliation complaints, and discharge

81. In May 2025, Plaintiff submitted a Connect covering on or about July 1, 2024, through April 30, 2025.

82. The review period included approximately six months of Plaintiff's approved FMLA leave and subsequent short-term disability leave and approximately one month after her return, during which Microsoft had removed her from the Account and provided no replacement customer assignments.

83. In that Connect, Ambli acknowledged that Plaintiff had attempted to become involved in additional Account initiatives but had not been included in conversations involving deeper technical work.

84. Ambli nevertheless rated her performance as LITE.

85. On or about June 11, 2025, Ambli discussed the LITE rating with Plaintiff and required her to choose by June 17, 2025, between a performance improvement plan and a Global Voluntary Separation Agreement.

86. On or about June 17, 2025, Plaintiff sent Ambli a written response, copying Human Resources. She stated that the proposed alternatives were retaliation for her protected leave and sex-discrimination complaints and her exercise of the right to take protected leave, and requested that employment decisions be paused until her complaints were investigated.

87. Plaintiff again contacted Human Resources on or about June 18, 2025.

88. On or about June 19, 2025, Amy Knott of Global Employee Relations contacted Plaintiff by email, acknowledging receipt of her complaints and confirming their referral to the Workplace Investigations Team.

89. Effective July 15, 2025, Microsoft assigned Jennifer Ihejimba ("Ihejimba") as Plaintiff's manager.

90. Plaintiff repeatedly requested meetings, feedback, and work assignments.

91. Ihejimba postponed or canceled scheduled meetings.

92. Between approximately July 15 and August 21, 2025, Plaintiff repeatedly asked Ihejimba for account assignments and was never assigned an account.

93. Other colleagues had received their assignments.

94. Ihejimba instructed Plaintiff to stand by while leadership worked through assignments.

95. By approximately August 20, 2025, Microsoft had not provided Plaintiff the Azure subscription needed to perform technical work.

96. On or about August 21, 2025, Ihejimba met individually with Plaintiff for the first time and informed her that Microsoft was terminating her employment for performance reasons.

97. The termination became effective on or about September 2, 2025.

98. Microsoft terminated Plaintiff before completing its internal investigation of her discrimination and retaliation complaints.

99. On or about September 30, 2025, Microsoft notified Plaintiff that it had determined her complaints were unsubstantiated.

100. Microsoft's stated performance reason was pretextual.

101. Microsoft withheld the technical assignments and customer engagements on which it evaluated Plaintiff, transferred her account responsibilities to male CSAs, and then relied on her asserted lack of technical contribution and customer impact to justify the adverse rating and discharge.

102. Ambli's performance assessments relied on criticism supplied by the account-team members who excluded Plaintiff.

103. Ambli's earlier evaluations, his direction that she lead a technical engagement, and the customer's recognition of her work contradicted that criticism.

104. Microsoft discriminated against Plaintiff because of her sex in the assignment of work, the removal of her account responsibilities, its performance-related employment decisions, and her discharge.

105. Microsoft continued denying Plaintiff assignments and discharged her after receiving her written complaints of sex discrimination and retaliation.

106. Her opposition to sex discrimination was a but-for cause of the retaliatory actions challenged in Counts II and IV.

107. As a result of Microsoft's conduct, Plaintiff lost wages, benefits, and employment opportunities and suffered emotional distress, humiliation, and other compensable harm.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e-2(a)

108. Plaintiff incorporates the above paragraphs.

109. Plaintiff was qualified for her CSA position and performed the work assigned to her.

110. Microsoft treated Plaintiff less favorably than male CSAs in access to customer work and account responsibilities.

111. In 2025, Microsoft removed her Account responsibilities, assigned those responsibilities to male CSAs, denied her replacement assignments, subjected her to adverse performance-related employment action, and terminated her employment.

112. These actions caused harm to the terms, conditions, and privileges of Plaintiff's employment.

113. Plaintiff's sex was a motivating factor in Microsoft's decisions, in violation of 42 U.S.C. § 2000e-2(a) and (m).

114. Microsoft's conduct caused the damages alleged above.

115. Microsoft acted with malice or reckless indifference to Plaintiff's federally protected rights by engaging in the challenged conduct after receiving express notice of her sex-discrimination complaints.

WHEREFORE, Plaintiff requests judgment against Microsoft on Count I and the applicable relief set forth in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e-3(a)

116. Plaintiff incorporates the above paragraphs.

117. Plaintiff engaged in protected opposition to sex discrimination, including her September 27, 2024 written complaint, the complaint communicated through counsel before her March 2025 return, and her June 2025 written objections and reports of retaliation.

118. She reasonably and in good faith believed the conduct she opposed violated Title VII.

119. Microsoft knew of Plaintiff's protected opposition.

120. After that opposition, Microsoft removed her account responsibilities, denied her replacement assignments, subjected her to the challenged performance-related actions, and terminated her employment.

121. These actions were materially adverse and would dissuade a reasonable employee from making or supporting a discrimination complaint.

122. Plaintiff's protected opposition was a but-for cause of Microsoft's retaliatory conduct, in violation of 42 U.S.C. § 2000e-3(a).

123. Microsoft's retaliation caused the damages alleged above.

124. Microsoft acted with malice or reckless indifference to Plaintiff's federally protected rights by retaliating after she expressly identified sex discrimination and retaliation in her complaints.

WHEREFORE, Plaintiff requests judgment against Microsoft on Count II and the applicable relief set forth in the Prayer for Relief below.

## COUNT III
## SEX DISCRIMINATION IN VIOLATION OF THE IHRA
## 775 ILCS 5/2-102(A)

125. Plaintiff incorporates the above paragraphs.

126. Plaintiff was an employee performing services in Illinois, and Microsoft was her employer, within the meaning of 775 ILCS 5/2-101. Plaintiff's sex is protected under the IHRA.

127. Microsoft discriminated against Plaintiff because of her sex by denying her technical and customer work, removing her account responsibilities, assigning those responsibilities to male CSAs, subjecting her to adverse performance-related employment action, and terminating her employment.

128. Microsoft's conduct constituted unlawful discrimination in the terms, privileges, and conditions of employment and in discharge, in violation of 775 ILCS 5/2-102(A).

129. Microsoft's discrimination caused the damages alleged above.

130. Plaintiff seeks the relief authorized by 775 ILCS 5/8A-104 and 5/8-111(A)(4).

WHEREFORE, Plaintiff requests judgment against Microsoft on Count III and the relief available under the IHRA set forth in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE IHRA
## 775 ILCS 5/6-101(A)

131. Plaintiff incorporates the above paragraphs.

132. Plaintiff opposed and reported conduct she reasonably and in good faith believed constituted unlawful sex discrimination under the IHRA.

133. Her protected activity included her September 27, 2024 complaint, the complaint communicated through counsel before her March 2025 return, and her June 2025 objections and retaliation complaints.

134. Microsoft knew of Plaintiff's protected activity and retaliated by removing her account responsibilities, denying her replacement assignments, subjecting her to the challenged performance-related actions, and terminating her employment.

135. Microsoft's actions were materially adverse, and Plaintiff's protected activity was a but-for cause of those actions. Microsoft thereby violated 775 ILCS 5/6-101(A).

136. Microsoft's retaliation caused the damages alleged above.

137. Plaintiff seeks the relief authorized by 775 ILCS 5/8A-104 and 5/8-111(A)(4).

WHEREFORE, Plaintiff requests judgment against Microsoft on Count IV and the relief available under the IHRA set forth in the Prayer for Relief below.

COUNT V
RETALIATION IN VIOLATION OF THE FMLA
29 U.S.C. § 2615(a)(1) and (2)

138. Plaintiff incorporates the above paragraphs.

139. At all relevant times, Microsoft was an employer covered by the FMLA within the meaning of 29 U.S.C. § 2611(4).

140. When Plaintiff's FMLA leave began on or about September 28, 2024, Plaintiff was an eligible employee within the meaning of 29 U.S.C. § 2611(2).

141. Plaintiff had been employed by Microsoft for more than twelve months.

142. Plaintiff exercised rights protected by the FMLA by requesting and taking the approved FMLA leave.

143. Microsoft knew that Plaintiff requested and took FMLA leave. Microsoft approved that leave, and Ambli supervised Plaintiff before and after her absence.

144. Plaintiff also engaged in protected activity by opposing retaliation for her use of protected leave in her June 17, 2025 complaint to Ambli and Human Resources.

145. Plaintiff reasonably and in good faith believed that Microsoft was penalizing her for exercising her FMLA rights.

146. After Plaintiff returned to work, Microsoft removed her customer-account responsibilities, denied her replacement assignments, issued the challenged LITE rating, required her to choose between a performance improvement plan and separation, and terminated her employment.

147. After receiving Plaintiff's June 2025 complaints of leave-related retaliation, Microsoft continued denying her work assignments and discharged her.

148. These actions were materially adverse and would dissuade a reasonable employee from exercising FMLA rights or opposing retaliation for exercising those rights.

149. Microsoft used Plaintiff's request for and use of FMLA leave as a negative factor in the challenged employment decisions.

150. Plaintiff's exercise of FMLA rights was a but-for cause of those actions.

151. Plaintiff's opposition to leave-related retaliation was also a but-for cause of the continued denial of assignments and discharge that followed her June 2025 complaints.

152. Microsoft retaliated against Plaintiff for exercising her FMLA rights and opposing leave-related retaliation, in violation of 29 U.S.C. § 2615(a)(1) and (2) and 29 C.F.R. § 825.220(c) and (e).

153. Its asserted performance-based explanation was pretextual for the retaliation alleged in this Count.

154. As a direct result of Microsoft's retaliation, Plaintiff lost wages, salary, employment benefits, and other compensation and continues to suffer economic loss.

155. Plaintiff seeks recovery of those losses and interest under 29 U.S.C. § 2617(a)(1)(A)(i) and (ii), an equal additional amount as liquidated damages under § 2617(a)(1)(A)(iii), appropriate equitable relief under § 2617(a)(1)(B), and reasonable attorneys' fees, expert witness fees, and costs under § 2617(a)(3).

WHEREFORE, Plaintiff requests judgment against Microsoft on Count V and the relief authorized by the FMLA set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment in her favor and against Microsoft and award the following relief, without duplicative recovery:

A. A declaration that Microsoft violated Title VII, the IHRA, and the FMLA;

B. Back pay, including lost salary, bonuses, incentive compensation, stock awards (including unvested awards forfeited upon termination), merit increases, and employment benefits, together with other recoverable economic losses, in amounts established at trial;

C. Reinstatement to an appropriate position or, in the alternative, front pay in lieu of reinstatement;

D. An equitable tax adjustment for any additional income-tax liability resulting from a lump-sum award, as permitted by law;

E. Compensatory damages under Counts I through IV for emotional distress, humiliation, and other compensable injury in amounts established at trial;

F. Punitive damages under Title VII on Counts I and II, as authorized by 42 U.S.C. § 1981a;

G. Equitable relief correcting Plaintiff's personnel records, including rescinding or correcting her LITE ratings, removing the performance-based termination designation, and removing any designation that she is ineligible for rehire;

H. An injunction prohibiting Microsoft from retaliating against Plaintiff, including by providing retaliatory negative employment references or interfering with her employment opportunities with Microsoft partners, customers, or vendors;

I. Reasonable attorneys' fees, expert witness fees, and recoverable costs and expenses under 42 U.S.C. § 2000e-5(k), 775 ILCS 5/8A-104, 29 U.S.C. § 2617(a)(3), and other applicable law;

J. Liquidated damages on Count V under 29 U.S.C. § 2617(a)(1)(A)(iii), equal to the compensation and interest recoverable under § 2617(a)(1)(A)(i) and (ii);

K. Prejudgment and postjudgment interest as permitted by law;

L. An order requiring Microsoft to implement effective steps to eliminate discrimination and retaliation; and

M. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 17, 2026

Respectfully submitted,

Hosai Yonoszai

By: *_/s/ Quinton Osborne_*
One of her attorneys

Quinton Osborne
Osborne Employment Law LLC
330 S. Naperville Road, Suite 408
Wheaton, IL 60187
T: 630-869-0923
F: 331-465-0450
Quinton@OsborneEmploymentLaw.com
Attorney Number 6319417